IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

GARY LEE WADDEL,          )
                                  )
         Petitioner,       )
                                  )
                                  )     CIV-08-873-W
v.                            )
                                  )
JUSTIN JONES, Director,    )
                                  )
         Respondent.     )

## SUPPLEMENTAL REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the following convictions entered against him in the District Court of Comanche County: Possession of Controlled Dangerous Substance in Case No. CF-2005-318, Kidnapping and Rape in the First Degree in Case No. CF-2005-327, and Kidnapping and Unauthorized Use of a Motor Vehicle in Case No. CF-2005-333.  In these consolidated cases, Petitioner was found guilty in a jury trial and sentenced to serve consecutive terms of imprisonment of 4 years and 3 months, ten years, life, ten years, and 4 years and 10 months, respectively.  Respondent has responded to the Petition and filed the relevant state court records, including the transcript of Petitioner's trial (hereinafter "TR__") and the original record (hereinafter "OR__"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings

1

consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that the Petition be denied.

I. Background

      Petitioner was charged in August 2005 with committing the offenses in the three above-described cases. Petitioner retained counsel in August 2005 and then retained new counsel, Mr. Michael Gassaway, in September 2005.  At Petitioner's request, the charges filed in these three cases were consolidated for trial. OR 77, 98-99.  At trial, the victim in the charges filed against Petitioner in Case No. CF-2005-327 testified that Petitioner abducted her at a car wash in Lawton, Oklahoma.  She testified Petitioner threatened her with a pistol in order to force her into the back seat of her vehicle, forced her to cover her head with a blue fabric bag, and then covered his own head with a stocking before driving to a house at another location that she could not identify. She testified that he took off the hood covering her head and the stocking covering his head before they entered the house where he brandished a gun, forced her to disrobe, and raped her. She testified that he used some lubricant that he carried in a bag. Petitioner drove her back to the car wash where he got out of her car and she saw him get into a blue truck and drive away.  The victim testified she then drove home, showered, and her cousin's boyfriend called the police.  She testified that the day after the rape and kidnapping she drove to Mexico for a vacation.  When she returned to Lawton she identified Petitioner in a photographic lineup conducted at the police station, and the victim also identified Petitioner at trial as the individual who abducted and raped her.

      The victim in the charges filed against Petitioner in Case No. CF-2005-333 testified

2

that Petitioner abducted her at the same car wash in Lawton, Oklahoma, but that she escaped and ran across the street to a construction site where construction workers called police. She testified that Petitioner used a pistol to force her into the back of her van and told her to put a fabric hood over her head but that she opened the door of the van and ran as he was driving her van away from the car wash. This victim testified that she identified Petitioner from a photographic lineup, and the victim also identified Petitioner at trial as the individual who abducted her and drove her vehicle without her permission. Both of the victims also testified that Petitioner was wearing something over his head at the time of the offenses that resembled a stocking. Both of the victims and two witnesses from the construction site described the vehicle Petitioner was driving after he committed these offenses. These descriptions were similar, and Lawton law enforcement officials testified that Petitioner and the vehicle were located at a residence in Lawton, Oklahoma, whereupon Petitioner was arrested.

In a search of this residence and Petitioner's vehicle conducted with a warrant, law enforcement officials discovered a pair of black pantyhose with one of the legs missing, controlled substances, drug paraphernalia, a lubricant in a trash can, and a semiautomatic handgun. As a result of DNA testing conducted upon a portion of the underwear being worn by the rape victim, the state criminalist/forensic scientist testified that Petitioner could not be excluded as a contributor to the alleles detected in the mixture obtained from the underwear. Law enforcement officers testified that after Petitioner's arrest and while they were driving him to the police station Petitioner was asked no questions yet Petitioner

volunteered that he "did not rape no one." TR 399.  Petitioner also volunteered at the police station that he "did not kidnap anyone," although the officer had not indicated to Petitioner why he was under arrest. TR 401-402.       The jury returned guilty verdicts and recommended punishments. Following the dismissal of the jury, Petitioner was sentenced consistent with the jury's recommendations and the sentences were ordered to be served consecutively.

Petitioner appealed the convictions.  Although counsel was appointed to represent Petitioner in the appeal, Petitioner employed Mr. Gassaway to represent him during the appeal, and his court-appointed attorney was allowed to withdraw from the appeal.  In his direct appeal, Petitioner asserted that the evidence presented at his trial was insufficient to support the rape and kidnapping convictions. Response, Ex. 1 (Brief of Appellant). Petitioner also alleged that the trial court erred in allowing in-court identifications of Petitioner following tainted pretrial identifications by photographic lineup.  Petitioner further alleged that the trial court erred in admitting law enforcement reports into evidence.  Finally, Petitioner asserted that his post-arrest statements to police should have been suppressed because the officer lacked probable cause to arrest him.  The State contended that no errors occurred with respect to the admission of evidence, that sufficient evidence supported the rape and kidnapping convictions, and that Petitioner's statements to police were properly admitted into evidence. Response, Ex. 2 (Brief of Appellee).

In a summary opinion, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed Petitioner's convictions and sentences. Response, Ex. 3 (Waddel v. State, No. F-2006-1061 (Okla. Crim. App. Aug. 20, 2007)(unpublished summary op.)).  In April 2008, Petitioner

4

filed a *pro se* application for post-conviction relief in the District Court of Comanche County in Case Nos. CF-2005-318, CF-2005-327, and CF-2005-333. Petitioner alleged that he was entitled to post-conviction relief because he was denied effective assistance of trial counsel. He based this claim on his allegation that Mr. Gassaway failed to present an alibi defense through two individuals who were not called as witnesses at his trial. Petitioner alleged that he was denied effective assistance of appellate counsel because Mr. Gassaway failed to raise the issue of his own ineffective assistance at trial. Response, Ex. 4. With his post-conviction application, Petitioner presented affidavits of his mother and stepfather attesting that Petitioner was at their home on July 21, 2005, from 10:00 a.m. until 10:55 a.m. and that they had provided this information to Mr. Gassaway. The post-conviction application was denied. Response, Ex. 5. The district court also denied Petitioner's application for modification of his sentences pursuant to Okla. Stat. tit. 22, § 982(a). Id.

Petitioner filed a second post-conviction application in the district court in November 2008. Response, Ex. 6. In this application, Petitioner renewed his previous claims that he was denied effective assistance of counsel because Mr. Gassaway did not present an alibi defense and did not assert his own ineffective assistance of counsel at trial. In support of this post-conviction application, Petitioner presented the same two affidavits submitted with his first post-conviction application. He also submitted as evidence a photocopy of an undated letter purportedly authored by his stepfather and directed toward the Oklahoma Supreme Court as well as various other documents in support of his claim of ineffective assistance of trial and appellate counsel. Response, Ex. 6. The post-conviction application was denied on

the basis of Petitioner's procedural default on appeal. Response, Ex. 7.

The OCCA affirmed the district court's denial of Petitioner's second post-conviction application. Response, Ex. 8. The OCCA found that Petitioner had not shown cause for his failure to assert his ineffective assistance of trial counsel claim in his direct appeal. The court also found that Petitioner had not shown that his defense and appellate counsel "made errors so serious the performance was deficient, and that the deficient performance deprived Petitioner of a trial and appeal whose results are reliable and fair." Response, Ex. 8. Thus, the court found that Petitioner had not demonstrated constitutionally ineffective assistance of trial or appellate counsel.

Petitioner now seeks habeas relief with respect to his convictions in the three cases that were consolidated for the purpose of his jury trial. In ground one, Petitioner asserts that insufficient evidence was presented at trial to support his convictions for rape and kidnapping in Case Nos. CF-2005-327 and CF-2005-333. In ground two, Petitioner contends that the trial court erred in allowing into evidence the in-court identifications of Petitioner following tainted pretrial identifications. In his third ground for habeas relief, Petitioner contends that his statements to police should have been suppressed because he was illegally stopped and detained. In ground four, Petitioner contends that the trial court erred in admitting into evidence photocopies of police reports. Petitioner raised these same four claims in his direct appeal. In a brief in support of the Petition, Petitioner asserts additional claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. These claims were presented in his first and second post-conviction applications.

II. <u>Standard of Review</u>

Because Petitioner's claims were denied by the OCCA on their merits, the standard for reviewing Petitioner's claims is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").   Under this standard, habeas relief may be awarded if the state appellate court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The AEDPA directs judicial review of a habeas petition to the result of the state appellate court's decision, not its reasoning. <u>Saiz v. Ortiz</u>, 392 F.3d 1166, 1176 (10th Cir. 2004), <u>cert. denied</u>, 545 U.S. 1146 (2005).  Federal courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).  If there is no clearly established federal law in Supreme Court cases involving facts that are closely-related or similar to those in the case being reviewed, the court need not assess whether the state court's holding was "contrary to" or an "unreasonable application" of established federal law.  <u>House v. Hatch</u>, 527 F.3d 1010, 1016-1017 (10th Cir. 2008)(interpreting <u>Carey v. Musladin</u>, 549 U.S. 70 (2006)), <u>cert. denied</u>, __ U.S. __, 129 S. Ct. 1345(2009).  Where the Supreme Court's "cases give no clear answer to the question presented, ...., it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law," and habeas "relief is unauthorized" under the explicit language of 28 U.S.C. § 2254(d)(1). <u>Wright v. Van Patten</u>, 552 U.S. 120, 128 S. Ct. 743, 747 (2008)(internal quotation and

7

citation omitted).

If "the threshold question as to the existence of clearly established federal law" is answered affirmatively, then the reviewing court must determine whether the state court decision is either contrary to or an unreasonable application of that law. House, 527 F. 3d at 1010, 1018. A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Williams, 529 U.S. at 405-406, 413.

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).   With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(per curiam).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson,  542 U.S. 649, 652 (2004)(per curiam)(citations omitted).

As to any factual issues raised in the Petition, the court must determine whether the state appellate court's decision was based on an "unreasonable determination of the facts in

8

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  In

this regard, AEDPA mandates that factual findings made by a state trial or appellate court

are presumptively correct and may be rebutted only by "clear and convincing evidence." 28

U.S.C. § 2254(e)(1).

III. Sufficiency of the Evidence

In ground one of his habeas Petition, Petitioner asserts that the evidence presented at

his trial was not sufficient to support his convictions for rape and kidnapping.   Judicial

review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial

"does not focus on whether the trier of fact made the correct guilt or innocence

determination, but rather whether it made a rational decision to convict or acquit." Herrera

v. Collins, 506 U.S. 390, 402 (1993).  For habeas review, "the relevant question is whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013

(10th Cir. 1996)(quoting Jackson).  In applying this standard, the reviewing court "may not

weigh conflicting evidence nor consider the credibility of witnesses" but must "'accept the

jury's resolution of the evidence as long as it is within the bounds of reason.'" Messer, 74

F.3d at 1013 (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1487(10th Cir. 1993)).

The OCCA rejected this claim in Petitioner's direct appeal.  The OCCA applied

Jackson's standard and concluded that "a rational trier of fact could find, beyond a

reasonable doubt, that [Petitioner] kidnapped both victims and succeeded in raping one of

them." Response, Ex. 3, at 2.  As support for its decision, the court pointed to evidence in the record of the "mutually corroborative descriptions of the assailant's *modus operandi* by the two victims, further corroboration of the assailant's vehicle by two independent eyewitnesses, corroborative physical evidence in [Petitioner's] possession, forensic DNA evidence, and [Petitioner's] own incriminating statements...." Id.

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. Jackson, 443 U.S. at 309, 324 n.16. Rape is defined in Oklahoma as "an act of sexual intercourse involving vaginal or anal penetration accomplished with a male or female who is not the spouse of the perpetrator ... where force or violence is used or threatened, accompanied by apparent power of execution to the victim or to another person." Okla. Stat. tit. 21, §1111(A).  First degree rape is committed under circumstances in which the rape is "accomplished with any person by means of force, violence, or threats of force or violence accompanied by apparent power of execution regardless of the age of the person committing the crime." Okla. Stat. tit. 21, §1114(A)(3). Kidnapping in Oklahoma is defined, *inter alia*, as the forcible confining or imprisoning of another person against the person's will. Okla. Stat. tit. 21, § 741.

Petitioner contends that inconsistencies in the victims's testimony at trial and the absence of corroborating DNA evidence support his claim of insufficient evidence to support his convictions.   The rape victim admitted at trial that the description she gave police of a man with blonde hair was not accurate. TR 92.  She also admitted that she may have been mistaken when she described the offender's pistol as small rather than large. TR 120. The

second victim admitted during the Petitioner's trial that her description of the offender immediately after the kidnapping differed from the physical features of Petitioner during the trial. TR 254.

However, as found by the OCCA, there was substantial corroboration between the descriptions given by the two victims of the means by which Petitioner committed the offenses.  Also, the descriptions given by the victims of the vehicle being used by the offender were similar and substantially matched the vehicle descriptions given by two other eyewitnesses.  The evidence showed Petitioner's vehicle was indeed similar to all four witnesses' consistent descriptions.  The evidence found in a search of Petitioner's vehicle and residence, including the one-legged pantyhose that matched the victims' description of the covering Petitioner placed over his head during the offenses, provided potent circumstantial evidence of his involvement in the offenses.  Contrary to Petitioner's assertion, forensic DNA evidence presented at his trial provided some evidence to support the rape conviction.  Petitioner's denial of any involvement in the rape or kidnappings, which he volunteered following his arrest and in the absence of evidence that he had been informed of the nature of the offenses, certainly could have been considered as incriminating evidence by the jury.  The rape victim testified that Petitioner forced her into her car, made her cover her head while he drove her to another location, and raped her, and that he used a pistol and slapped her in the face during the offenses.  The second victim testified that Petitioner physically restrained her inside her car, using a pistol as a visible sign of force, and then attempted to drive away from the car wash.  Based on the testimony of the victims, a rational jury could

have found Petitioner guilty beyond a reasonable doubt of the rape and kidnapping offenses.

Although Petitioner's defense counsel attempted to discredit the victims' testimony by pointing out discrepancies in their testimony, it is not for this Court to "weigh conflicting evidence or consider the credibility of witnesses" when reviewing a habeas challenge to the sufficiency of the evidence. Valdez v. Bravo, 373 F.3d 1093, 1097 (10th Cir. 2004). "A court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id.  As support for his insufficient evidence claim, Petitioner refers to evidence that "he was proven to be with his elderly - ill parents, witnessed by a neighbor."  However, habeas review of the sufficiency of the evidence to support a conviction is "limited to 'record evidence' ... [and] does not extend to nonrecord evidence." Herrera v. Collins, 506 U.S. 390, 402 (1993)(quoting Jackson, 443 U.S. at 318).  Petitioner's reference to allegedly exculpatory evidence that was not presented at his trial has no bearing upon the issue of the sufficiency of the evidence presented at his trial to support his convictions.  Substantial evidence of Petitioner's guilt was presented at his trial, and the OCCA's rejection of his claim of insufficient evidence to support the rape and kidnapping convictions was not contrary to or an unreasonable application of the governing Jackson standard.  Thus, Petitioner is not entitled to habeas relief concerning this claim.

IV. In-Court Identifications

In his second ground for habeas relief, Petitioner contends that the trial court erred in

allowing into evidence the in-court identifications of Petitioner by the victims following "tainted" pretrial photographic lineup identifications. When a defendant challenges pretrial identification procedures, the defendant must first establish that the identification procedure was impermissibly suggestive. Manson v. Brathwaite, 432 U.S. 98, 109 (1977). Even if the procedure is found to be unduly suggestive, "reliability is the linchpin in determining the admissibility of identification testimony ..." Id. at 114. Consequently, an identification is valid if it was reliable, and the factors to be considered to determine whether an identification was reliable include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199-200 (1972). Unless these factors present "'a very substantial likelihood of irreparable misidentification,' ... such evidence is for the jury to weigh." Manson, 432 U.S. at 116 (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).

The victims both testified that after the crimes they had taken separate trips to Mexico. There was testimony that the first victim left the following day and traveled by car to central Mexico. TR 147. The second victim testified that following the kidnapping she left the country for a week on a previously-scheduled trip to Cabo San Lucas, Mexico. TR 267-269. After they returned to their homes following these trips, the victims testified they were notified that an individual had been arrested and they separately went to the police station where they each positively identified Petitioner from a photographic lineup. Both victims

then positively identified Petitioner as the offender during trial.

Petitioner argued in his direct appeal that the victims did not positively identify Petitioner "until such time as after both had returned from Mexico, had seen the papers and the news, and then were called to come in and identify the Defendant." Response, Ex. 1, at 33.  Petitioner relies on the same argument in support of his claim in ground two of the Petition.  He asserts that the victims "only identified Petitioner after he was shown on television and a picture printed in the newspaper...." Petition, at 7-8.  The OCCA found that the identifications of Petitioner made by the victims during trial were not the result of impermissibly suggestive pretrial photographic lineup identifications.  The court noted that because Petitioner had not objected at trial to the victims' in-court identifications the issue was being reviewed only for plain error.  The court found Petitioner had not shown "that either [victim] actually saw a photograph of [Petitioner] in the media before identifying him from a photographic lineup" and concluded no plain error occurred. Response, Ex. 3, at 2.

The problem with Petitioner's argument is that no evidence was presented at the trial showing that either victim had seen a photograph of Petitioner on television or in a newspaper prior to their identification of him in the photographic lineups.  Both victims testified that before they viewed the photographic array law enforcement officials only advised them an individual had been arrested.  They testified the officers did not tell them that Petitioner had been arrested or indicate which of the photographs was that of the suspect.  Testimony at the trial showed that both victims firmly identified Petitioner as the offender after viewing the photographic arrays.  TR 337-340.  Despite zealous and thorough cross-

examination, both victims firmly identified Petitioner as the offender during the trial.  The

OCCA's finding that the in-court identifications of Petitioner were not the result of

impermissibly suggestive pretrial identification procedures was not contrary to or an

unreasonable application of the prevailing <u>Manson</u> and <u>Biggers</u> standard.  Accordingly,

Petitioner is not entitled to habeas relief concerning this claim.

V. <u>Suppression of Post-Arrest Statements</u>

     In his third ground for relief, Petitioner contends that his statements made to police

soon after his arrest should have been suppressed because the statements were the result of

"an illegal stop and unlawful detention and [officers obtained] illicit conversations from him

for the purposes of prosecution." Petition, at 9.   In his direct appeal, Petitioner raised this

claim and pointed to the testimony of Lawton police officer Mackey as support for his

assertion that officer Mackey did not have probable cause to stop and arrest Petitioner.

     Officer Mackey testified at Petitioner's trial that he was advised by Lawton police

detectives to initiate a traffic stop of a vehicle being driven by Petitioner because it was "a

vehicle that they were interested in." TR 395.  He testified that Petitioner's vehicle was

pulled over in front of Petitioner's house and that he then handcuffed Petitioner and placed

Petitioner in the back of the patrol car. TR 396-397. Immediately after this testimony,

Petitioner orally moved to suppress statements made by Petitioner during the ensuing drive

to the police station on the basis that Petitioner had been illegally stopped and detained

without probable cause. TR 398.  In response to the oral motion to suppress, the prosecutor

argued that probable cause to arrest Petitioner had been demonstrated at trial through the

testimony of other witnesses and that one officer could provide the probable cause to support

an arrest of a suspect by another officer.  TR 398-399.  The motion was overruled.  TR 399.

Officer Mackey then testified that he made no statements to Petitioner and he had not

advised Petitioner why he was under arrest or heard anyone else tell Petitioner why he was

under arrest.  TR 399-400.  However, Officer Mackey testified that during the drive to the

police station Petitioner volunteered that he "did not rape no one." TR 399.  Officer Mackey

testified that after they arrived at the police station Petitioner volunteered that he did not

kidnap anyone.  TR 401.

Respondent contends that Stone v. Powell, 428 U.S. 46 (1976), bars Petitioner from

asserting this Fourth Amendment claim for habeas review.  In Stone, the Supreme Court

addressed the issue of whether state prisoners may assert a violation of the Fourth

Amendment with respect to seized evidence in a federal habeas proceeding.  The Court

reasoned that the purpose of the exclusionary rule was "to discourage law enforcement

officials from violating the Fourth Amendment by removing the incentive to disregard it,"

and that this goal would not be enhanced "if there were the further risk that a conviction

obtained in state court and affirmed on direct review might be overturned in collateral

proceedings often occurring years after the incarceration of the defendant." Id. at 492-493.

Further, the Supreme Court found that any benefit from allowing habeas review of a search-

and-seizure claim would be outweighed by the costs to other values promoted by the criminal

justice system. Id. at 493-494.  Thus, the Court concluded that where a State has provided

"an opportunity for full and fair litigation of a Fourth Amendment claim," a state prisoner

16

may not obtain habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. Id. at 494.

The "opportunity for full and fair consideration" portion of the Stone principle "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim." Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978). "It also includes the full and fair evidentiary hearing contemplated by Townsend [ v. Sain, 372 U.S. 293 (1963)]. Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards." Id.

Although Petitioner did not move to suppress his post-arrest statements prior to trial, he orally moved to suppress the evidence during trial. The trial court heard the arguments of counsel and ruled without explanation that the statements were admissible. Petitioner renewed his Fourth Amendment claim in his direct appeal. The OCCA applied its precedent, which holds that "probable cause must consist of reasonably trustworthy knowledge of facts and circumstances, at the moment of arrest, sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense," Bradfield v. State, 648 P.2d 1239, 1241 (Okla. Crim. App. 1982)(cited with approval in Woods v. State, 674 P.2d 1150, 1152 (Okla. Crim. App. 1984)), and found that the "record supports the trial court's denial of [Petitioner's] impromptu motion to suppress." Response, Ex. 3, at 3. The OCCA reasoned that "[h]aving confirmed that [Petitioner's] truck matched the descriptions given by the victims and other witnesses, police had probable cause to effect a traffic stop and place [Petitioner] under arrest for a felony offense." Id. Petitioner was not provided a hearing at

trial or on appeal concerning his Fourth Amendment claim.  Moreover, neither the trial court nor the OCCA relied on Fourth Amendment constitutional standards in rejecting Petitioner's claims.  Thus, whether <u>Stone</u> applies to bar habeas review of the Fourth Amendment claim is dubious.  Even assuming that <u>Stone</u> does not apply, Petitioner's claim is without merit..

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000).  Reasonable suspicion may be based on the collective knowledge of the investigating law enforcement officers. <u>United States v. Hensley</u>, 469 U.S. 221, 232 (1985).  <u>See</u> <u>Adams v. Williams</u>, 407 U.S. 143, 147 (1972)(holding reasonable cause to stop suspicious individual need not be based only on officer's personal observation but may be based on information supplied by another individual).   "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." <u>Henry v. United States</u>, 361 U.S. 98, 102 (1959).  "Probable cause only requires a probability of criminal activity, not a prima facie showing of such activity." <u>Wilder v. Turner</u>, 490 F.3d 810, 813 (10th Cir. 2007).

At the time Petitioner was stopped by Officer Mackey, the investigating law enforcement officers had, as the OCCA found, confirmed that Petitioner's truck matched the descriptions given by the victims and the eyewitnesses which gave them a reasonable suspicion of Petitioner's involvement in the rape and kidnapping offenses sufficient to justify stopping Petitioner in a different vehicle Petitioner was observed driving, and also provided

18

probable cause to arrest Petitioner for the offenses. TR 325-332. The OCCA's finding that law enforcement officers had reasonable cause to stop Petitioner's vehicle and probable cause to arrest him is not contrary to or an unreasonable application of controlling Supreme Court jurisprudence. Accordingly, Petitioner is not entitled to habeas relief with respect to this claim.

## VI. Error in Admission of Evidence

In ground four of the Petition, Petitioner asserts that the trial court erred in admitting into evidence copies of police reports which he contends violated evidentiary prohibitions on hearsay evidence. In his direct appeal, Petitioner submitted in support of this claim only a conclusory statement that the trial court's admission of the reports marked as State's Exhibits 11 and 12 was prejudicial error because the reports "constitutes [sic] bolstering [and] impermissible admission of hearsay...." Response, Ex. 1, at 35-36. The OCCA reviewed the merits of this claim under state evidentiary law and concluded that no error occurred in the admission of the police reports into evidence. The court reasoned that

> defense counsel vigorously cross-examined the officer who took one complainant's report, attempting to show the jury that either the officer did not report information correctly, or the complainant's description of the assailant to police was at odds with her trial testimony. While the report itself might be hearsay under other circumstances, it was not in this case; the report was not offered for its truth, but to confirm that, whether the descriptions were accurate or not, the officer took down information just as the complainant related it.

Response, Ex. 3, at 3. The court further noted that defense counsel had extensively read from the report during trial "and, if anything, the report only underscored inconsistencies in the

various descriptions the complainant gave." Id.

It is well established that the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, laws, or treaties. *E.g.*, Mabry v. Johnson, 467 U.S. 504, 507(1984); Pulley v. Harris, 465 U.S. 37, 41(1984); Smith v. Phillips, 455 U.S. 209, 221(1982); Brinlee v. Crisp, 608 F.2d 839, 843(10th Cir. 1979), cert. denied, 444 U.S. 1047 (1980). In this regard, the Supreme Court has stated that "[f]ederal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith, 455 U.S. at 221. When a habeas petitioner challenges a state court's admission of evidence, "[t]he question presented in [the habeas proceeding] is not whether th[e] evidence was admissible under state law, but instead whether considered in light of the entire record, its admission resulted in a fundamentally unfair trial." Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002), cert. denied, 538 U.S. 930 (2003).

Petitioner has not shown that the admission of the police reports into evidence denied him a fair trial. The OCCA's decision rejecting this claim on state evidentiary grounds was not an unreasonable application of clearly established federal law. Consequently, Petitioner is not entitled to habeas relief with respect to this claim.

## VII. Ineffective Assistance of Trial and Appellate Counsel

In his brief in support of the Petition, Petitioner presents additional claims of ineffective assistance of trial and appellate counsel. The record shows that Petitioner was represented by Mr. Gassaway both at trial and in his direct appeal. Petitioner contends, as

he did in his post-conviction applications, that Mr. Gassaway provided constitutionally ineffective assistance of counsel at trial when he failed to present an alibi defense for Petitioner supported by the testimony of his mother and stepfather.  With his post-conviction applications filed in the state courts, Petitioner submitted the affidavits of his mother and stepfather attesting that they advised Mr. Gassaway Petitioner was at their home on July 21, 2005 (the day of the rape and kidnapping offenses involving the first victim) between 10 a.m. and 10:55 a.m.

"To establish ineffective assistance of counsel, a petitioner must prove that counsel's deficient performance was constitutionally deficient and that counsel's deficient performance prejudiced the defense, depriving the petitioner of a fair trial with a reliable result." Boyd v. Ward, 179 F.3d 904, 913 (10th Cir. 1999)(citing Strickland v. Washington, 466 U.S. 668, 687 (1984)), cert. denied sub nom. Boyd v. Gibson, 528 U.S. 1167 (2000).   Counsel's performance is evaluated from the attorney's perspective at the time of the assistance, considered in light of all the circumstances prevailing at that time, and indulging a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Prejudice, under the second prong, is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "[T]here is no reason for a court deciding an ineffective assistance claim...to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Petitioner contends that Mr. Gassaway provided constitutionally ineffective assistance

21

of appellate counsel when he failed to assert a claim of his own ineffective assistance at trial. To warrant habeas relief concerning this claim, Petitioner must satisfy both prongs of the test established in Strickland, supra; that is, he must show that his attorney's representation fell below an objective standard of reasonableness and that counsel's errors prejudiced the defense. Strickland, 466 U.S. at 687.  Where appellate counsel's deficiencies relate to trial counsel's conduct, the claim of ineffective assistance of appellate counsel is reviewed alongside the claim of ineffective assistance of trial counsel, applying "great deference" to counsel's decision to omit an issue on appeal. Boyd, 179 F.3d at 914.

The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).  "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." Jackson v. Shanks, 143 F.3d 1313, 1321 (10th Cir.), cert. denied, 525 U.S. 950 (1998). If an issue that appellate counsel failed to raise has merit, the court must determine whether counsel's failure to raise the issue was deficient and prejudicial. Hawkins, 185 F.3d at 1152.

"If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance...." Cargle v. Mullins, 317 F.3d 1196, 1202 (10th Cir. 2003).  If the omitted issue "has merit but is not so compelling ... [the court must assess] ... the issue relative to the rest of the appeal, and deferential consideration must be given to any

professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance." Id.  See Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999)(if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance).

Petitioner contends that Mr. Gassaway was aware of but chose not to present an alibi defense to the charges filed against Petitioner. Informal Brief (Doc. # 21), at 3.[1] Petitioner contends that his defense attorney also failed to present evidence in his defense that he had signed tools and equipment in and out "that morning from [P]etitioner's work." Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689.  Nothing in the trial record supports Petitioner's allegation that his defense attorney was aware of an alibi defense.

Petitioner does not explain why he retained Mr. Gassaway to represent him on appeal, after he had obtained court-appointed representation for his appeal, if he believed an alibi defense should have been presented by defense counsel at his trial.  Petitioner does not allege that he requested Mr. Gassaway present a claim of ineffective assistance of trial counsel in the appeal.  Petitioner was convicted in September 2006, and his mother and stepfather did not provide affidavits of their proposed testimony until March 2008.   Mr. Gassaway

---

[1]Petitioner also contends that his defense attorney failed to provide any evidence in his defense that he "is physically unable to have committed this offense, being 90% disable [sic], as determined by the United States Department of Defense [The United States Army]." However, Petitioner did not  present this allegation in support of his post-conviction applications. Even if this claim has been exhausted, Petitioner has provided no evidence in support of this claim.  His assertion that he was working the day of the rape/kidnapping involving the first victim is wholly inconsistent with any claim that he was nearly disabled at the time of the offenses.

vigorously cross-examined the prosecution's witnesses and presented a defense of mistaken identification based on inconsistencies between Petitioner's actual appearance and the descriptions provided by the victims to law enforcement following the offenses.   Mr. Gassaway also zealously argued that the evidence presented at trial was not sufficient to support the convictions, given the lack of convincing DNA evidence of Petitioner's guilt and the absence of other convincing direct or circumstantial evidence of guilt.  It certainly cannot be said, given a thorough reading of the transcript, that these were not viable defenses to the charges.  Petitioner's assertion that his attorney had information showing Petitioner had been at work on the morning of the rape/kidnapping involving the first victim is entirely inconsistent with his assertion that he was at his parent's home during the time period of the offenses.   Nonetheless, even if Mr. Gassaway's failure to call Petitioner's mother and stepfather as witnesses or provide evidence of Petitioner's work schedule on the day of the rape/kidnapping offenses constituted unreasonable errors, Petitioner has not shown that "but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." Boyd v. Ward, 179 F.3d 904, 913 (10th Cir. 1999).  The obvious bias on the part of Petitioner's mother and stepfather would have lessened the reliability of their testimony, assuming they were available to testify. Petitioner has failed to show how evidence of his work schedule on the day of the rape/kidnapping offenses, given his inconsistent assertion that he was at his parents' home, would have resulted in a different result at trial.  Considering the "totality of the evidence," Cooks v. Ward, 165 F.3d 1283, 1293 (10th Cir. 1998), cert. denied, 528 U.S. 834 (1999), substantial evidence of Petitioner's

guilt was presented at his trial.  The consistent testimony of the victims and the two eyewitnesses concerning the descriptions of Petitioner's truck, the physical evidence found at his residence connecting him with the offenses, and the consistency of the victims' testimony concerning the Petitioner's *modus operandi* provided more than sufficient evidence for a reasonable jury to have found Petitioner guilty.  An alibi defense based on the proposed testimony of Petitioner's mother and stepfather that he was at their home for less than an hour on the date of the rape/kidnapping of the first victim was not so clearly exculpatory that Mr. Gassaway's failure to assert this claim of ineffective assistance of trial counsel on appeal was constitutionally unreasonable assistance under the circumstances.  Accordingly, Petitioner has not shown that he was denied effective assistance of trial or appellate counsel.  Consequently, Petitioner is not entitled to habeas relief concerning this claim.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED  The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by _____August  18<u>th</u>_____ , 2009, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling.  <u>Moore v. United States of America</u>, 950 F.2d 656 (10<u>th</u> Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10<u>th</u> Cir. 1996)("Issues raised for the first time in objections to the magistrate

judge's recommendations are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____29th_____ day of ____July_____, 2009.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE